UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JERRY LEE DARRAH, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 3:16-cv-05269-KLS <br><br> ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court affirms defendant's decision to deny benefits.

FACTUAL AND PROCEDURAL HISTORY

On October 3, 2012, plaintiff filed an application for disability insurance, and on June 18, 2013, he filed another application for SSI benefits, alleging in both applications that he became disabled beginning January 1, 2007. Dkt. 7, Administrative Record (AR), 12. Those applications were denied on initial administrative review and on reconsideration. *Id.* At a hearing held before an Administrative Law Judge (ALJ) plaintiff appeared and testified, as did a vocational expert. AR 58-98. At a supplemental hearing, additional vocational expert testimony was obtained. AR 36-57.

ORDER - 1

In a decision dated August 28, 2014, the ALJ found that prior to May 23, 2012, plaintiff could perform other jobs existing in significant numbers in the national economy and therefore that he was not disabled before then, but that after that date, plaintiff was unable to perform other jobs and thus was disabled. AR 12-23. The Appeals Council denied plaintiff's request for review of the ALJ's decision, making it the final decision of the Commissioner, which plaintiff appealed to this Court. AR 1; 20 C.F.R. § 404.981, § 416.1481; Dkt. 1.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits for the entire relevant period, arguing the ALJ erred (1) in rejecting the opinion of John Hamill, M.D., and (2) in discounting plaintiff's credibility. For the reasons set forth below, however, the Court disagrees that the ALJ erred as alleged, and therefore affirms the ALJ's decision.

## DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

The Commissioner's findings will be upheld "if supported by inferences reasonably

ORDER - 2

drawn from the record." *Batson*, 359 F.3d at 1193. Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I.   The ALJ's Evaluation of Dr. Hamill's Opinion

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881

ORDER - 3

F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

With respect to the opinion evidence from Dr. Hamill, the ALJ found as follows:

> John Hamill, M.D., saw the claimant in February 2012. He said he had not seen the claimant in three years. The claimant had returned to Dr. Hamill because he was frustrated with the V.A. hospital. The claimant reported a history of panic attacks. He said poor balance kept him from continuing to

ORDER - 4

work as a diver. According to Dr. Hamill, the claimant was likely at least partially disabled. He recommended limiting the claimant to sedentary work. (Ex. 7F, p. 4-7). Dr. Hamill's opinion from February 2012 receives little weight. He acknowledged that he based this opinion largely on the claimant's statements, as he did not have access to the full medical records, had not seen the claimant in three years, and had not conducted his own testing. Further, Dr. Hamill appeared to be advocating for the claimant's disability application by referring him to a local attorney. Dr. Hamill completed a physical capacities evaluation form in September 2013. (Ex. 9F). He did not apply those limitations to the period before May 2012. As Dr. Hamill acknowledged he did not see the claimant between 2009 and the February 2012 office visit, I find that the September 2013 evaluation receives little weight before May 2012.

AR 18. Plaintiff argues the ALJ erred in so finding, asserting that Dr. Hamill never specifically acknowledged he based his opinion largely plaintiff's subjective complaints. The record, though, supports the ALJ here. In a February 2012 progress note, Dr. Hamill expressly stated that he had not seen plaintiff "in almost 3 years," and that if all of the physical issues plaintiff reported were true, he was "at least partially disabled." AR 983-84. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion.") (internal citations omitted).

Plaintiff goes on to point out, though, that in an addendum to that progress note, Dr. Hamill noted testing results that revealed "a peak flow . . . substantially lower than anticipated for [plaintiff's] age," which Dr. Hamill found to be "significant for a substantial amount of cardiopulmonary strain." AR 986. Dr. Hamill opined that based on that reading, at the very least plaintiff "would be medically disabled from . . . any of the previous [jobs] that he has done." *Id.* The Court thus agrees with plaintiff that the ALJ erred in stating Dr. Hamill did not conduct any of his own testing. The Court, however, finds that error to be harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial

ORDER - 5

to claimant or irrelevant to ALJ's ultimate disability conclusion); *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

First, the ALJ did not err in discounting Dr. Hamill's opinion on the basis that he had not seen plaintiff for the previous three years. 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion; 20 C.F.R. § 416.927(c)(2)(i) (same). Second, while the ALJ may not have set forth the specific instances of apparent advocacy by Dr. Hamill in his decision, evidence of such advocacy is fairly clear in the record.

In February 2012, Dr. Hamill suggested plaintiff contact a local attorney who specialized in disability. AR 984. Although this alone might not suffice to indicate improper advocacy on Dr. Hamill's part, together with his other statements it does. For example, in the same progress note, Dr. Hamill commented:

> . . . I believe that he is very likely to meet criteria for disability . . . He is going to require further documentation just my opinion say so without further evaluation is not going to be sufficient. . . .
>
> . . . I informed him that often in my opinion disability judges take the recommendations and opinions from physician's [sic] moderately skeptically, but I have also seen physicians who were labeled as 'experts,' whose opinions I have disagreed with, and I can find objective evidence of inadequate evaluations, so this is a double-edged sword as well. The patient will need to have a lot of stuff [done] even before we can move forward to a formal evaluation. . . .

AR 985. In April 2013, Dr. Hamill stated:

> . . . We are trying to establish disability . . . He does have pending administrative appeal apparently with the judge for his disability, which he reports has been turned down twice. I think statistically he will do much better if he does have representation. Patient also had no records from the VA Hospital. I contacted their medical records department; they confirmed they had 277 notes for him. If we will fax them a copy of our official form and

ORDER - 6

> what we need, they will send it over even without a medical release . . . Patient is fortunately here and he can sign a release form and is encouraged to do so. He is otherwise able to go out into his car and come back with some of the records that he had available and these do demonstrate multiple issues . . . With respect to his issues for disability, I think the patient probably does qualify for disability. . . . We are still in the process of trying to recover and obtain all of the information on this. . . . He . . . was very quickly able to identify that he had the records that would be helpful and went back to get them and brought them right back to the office. . . .

AR 997-99. Then again in June 2013, Dr. Hamill reported:

> . . . Reviewed 108 pages of previous VA records and reviewed the note that the patient brought in regarding disability, denying his claim at the current time because the listed issues had not been proven to be present before 12/2011. I gave the patient a copy of the 108 pages and I had gone through and tried to highlight for him issues that I want him to discuss at his appointment with [his disability attorney], which is coming up shortly. . . . He has not had pulmonary function tests that I have seen, but we could document that . . .

AR 1000-1001. Given these statements, it was not unreasonable for the ALJ to find Dr. Hamill was acting as plaintiff's apparent advocate. *Lester*, 81 F.3d at 832 (while "[t]he Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits . . . the Secretary may introduce evidence of actual improprieties") (citations and internal quotations omitted).

Lastly, the ALJ noted correctly that the physical capacities evaluation form Dr. Hamill completed in September 2013, which also indicated plaintiff was disabled, gave no indication that the limitations described therein applied to the period prior to May 2012. AR 1003-1004. Plaintiff does not challenge this basis for discounting Dr. Hamill's opinions. Thus, for this and the other reasons discussed herein, the ALJ's rejection of those opinions was proper.

II.     The ALJ's Assessment of Plaintiff's Crediblity

Questions of credibility are solely within the control of the ALJ. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this

ORDER - 7

credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *See id.*

The ALJ discounted plaintiff's credibility in part because "[t]here are minimal medical records before May 23, 2012," to indicate disability prior to that date. AR 18. Plaintiff argues the record shows he was receiving regular medical treatment for that period, but fails to point to any

ORDER - 8

specific records that would support the severity of his allegations. This therefore was a valid basis for finding plaintiff to be less than fully credible regarding those allegations. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ properly discounted claimant's credibility due to lack of consistent treatment in the record); *see also Meanal v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

The ALJ also discounted plaintiff's credibility on the following basis:

> Before May 23, 2012, the claimant's daily activities showed fewer limitations than alleged. The claimant alleged an onset date of January 1, 2007, but records from May 2010 indicate that the claimant was still looking for work in the nuclear industry. He had done part-time consulting work, and he was not relying on his retirement or his savings. He moved to be closer to his sister, who recently underwent chemotherapy. He said he was going fishing soon after the May 2010 appointment. (Ex. 10F, p. 38). In November 2011, the claimant reported that he could maintain his hygiene (with some hand pain and instability while standing). He would prepare frozen meals, shop, and drive a little. He did not do chores. (Ex 6E).

AR 18. Although plaintiff argues the ALJ does not state what specific abilities these activities contradict, seeking out other employment during the relevant time period can be a valid basis for discounting a claimant's credibility. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996). Thus, while the Court agrees with plaintiff that the record fails to show the other activities the ALJ notes establish that he could spend a substantial part of the day performing them, that those activities are necessarily transferrable to a work setting, or that they contradict plaintiff's other testimony – and therefore this was not a valid basis for discounting his testimony (AR 72-75, 301-05, 321-25, 339, 341, 356-57; *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Smolen*, 80 F.3d at 1284 n.7)  – the ALJ provided other valid bases for doing so, each with "ample support in the record" (*Bray*, 554 F.3d at 1227; *Tonapetyan*, 242 F.3d at 1148).

ORDER - 9

CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is AFFIRMED.

DATED this 28 day of September, 2016.

Karen L. Strombom
United States Magistrate Judge

ORDER - 10